# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSSELL LANG, | 1:08-cv-01407-AWI-DLB (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| JERRY BROWN, | [Doc. 1] |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND[1]

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation (CDCR) following his 1974 conviction in Sacramento County Superior Court for conspiracy to commit murder, first degree murder, and possession of a weapon. Petitioner was sentenced to one life term (seven years to life) plus one year.

In the instant petition, Petitioner does not challenge the validity of his conviction; rather, he challenges the Board of Parole Hearings' (Board) October 11, 2006 decision finding him unsuitable for release on parole. Petitioner contends (1) there was not some evidence to support the Board's decision; (2) the Board discriminated against him when compared to his three co-defendants; (3) he is being held for a term that is disproportionate to his crime under the

---

[1] This information is derived from the Petition, Traverse, and state court documents lodged with this Court.

1

Determinate Sentencing Law (DSL); (4) he is being held for a term that is disproportionate to his culpability under the Indeterminate Sentencing Law (ISL) because he was never provided a hearing under the ISL; and (5) the Board did not state its reasons for finding him unsuitable.

In 2007, Petitioner filed a state petition for writ of habeas corpus in the Sacramento County Superior Court challenging the Board's 2006 decision. On August 21, 2007, the superior court denied the petition in a reasoned decision. In finding some evidence supported the Board's denial, the Court stated that "Petitioner's crimes were committed on separate occasions against multiple persons singled out only because of their race. Petitioner was urged to commit such crimes by the Nation of Islam, but the records failed to show why petitioner would be particularly drawn to this group or why, after a relatively short association, he would commit murder for the group. Thus, his motive seems trivial in relationship to the crime." The court declined to "re-assess the Board's reasoning, element by element," because the commitment offense provided some evidence to support the Board's decision.

On October 17, 2007, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, Third Appellate District. On October 25, 2007, the petition was denied with citation to People v. Duvall, 9 Cal.4th 464, 474 (1995).

On December 21, 2007, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. On June 25, 2008, the California Supreme Court summarily denied the petition.

Petitioner filed the instant petition for writ of habeas corpus on September 19, 2008. Respondent filed an answer to the petition on January 21, 2009, and Petitioner filed a traverse on February 6, 2009.

## STATEMENT OF FACTS[2]

### First Shooting

Backridge, a white, off duty Sacramento City Police sergeant had purchased gasoline for his automobile at the Quick Stop Market, corner of Franklin Boulevard and Fourth Avenue in

---

[2] This information is taken from the 2006 Board hearing, which quoted from the appellate court decision. (Answer, Exhibit 1, Attachment E, Transcript at 12-14.)

1  Sacramento shortly after 10:00 p.m. on the evening of Saturday, April 10th, 1974. After paying
2  for the purchase, he walked back towards his vehicle, heard a loud report from his right and felt
3  that he had been shot in the legs. He called to the store clerk to notify the police. The call was
4  received by the Sacramento Police Department at 10:13 p.m. Backridge had fallen to the ground,
5  did not see the person who shot him, nor any vehicle which he could associate with the incident.
6  There were, however, two witnesses to the shooting, Mac Burcell, riding his bicycle north on
7  Franklin Boulevard toward the market heard the report of a gun shot from the direction of the
8  market, saw Backridge fall to the ground then saw Petitioner run to the west of the intersection
9  and duck into an alley.

      Second Shooting

On April 21, 1974, at approximately 11:30 p.m. Orvelle left the Sea Shanty Bar on Stockton Boulevard in Sacramento and walked toward his home. He had consumed two beers at the bar and was carrying a six pack of beer with him. When approaching Perry Avenue, he felt a force on the back of his head, as if someone had hit him with a baseball bat. He turned around and saw Petitioner approximately 25 feet away from him, crouched with a weapon in his hand, which he believed was a sawed-off shotgun. Petitioner then fired the weapon again, then ran to a vehicle approximately ninety feet away.

      Third Shooting/Murder

On April 24, 1974, at approximately 1:00 a.m., Frank Belmore and his friend Michael Nuwyaka were sitting in the front room of Belmore's parents' home. There was a gap in the window drapes approximately 12 to 15 inches and someone looking in the window from the outside could ascertain that Belmore was white. Nuwyaka heard a blast through the window and then Belmore slumped in his chair. Belmore was shot in the head and was bleeding. He died as a result of a shotgun wound to the cervical spine and brain stem.

DISCUSSION

I.  Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

1  enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries
2  v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th
3  Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy,
4  521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).
5  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its
6  provisions.
7  　　　Petitioner is in custody of the California Department of Corrections and Rehabilitation
8  pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state
9  court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because
10 he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass
11 v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v.
12 Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a
13 habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the
14 petition is not challenging [her] underlying state court conviction.'").
15 　　　The instant petition is reviewed under the provisions of the Antiterrorism and Effective
16 Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63,
17 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the
18 adjudication of the claim "resulted in a decision that was contrary to, or involved an
19 unreasonable application of, clearly established Federal law, as determined by the Supreme Court
20 of the United States" or "resulted in a decision that was based on an unreasonable determination
21 of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.
22 § 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.
23 　　　"[A] federal court may not issue the writ simply because the court concludes in its
24 independent judgment that the relevant state court decision applied clearly established federal
25 law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.
26 A federal habeas court making the "unreasonable application" inquiry should ask whether the
27 state court's application of clearly established federal law was "objectively unreasonable." Id. at
28 409.    Petitioner has the burden of establishing that the decision of the state court is contrary to

4

1  or involved an unreasonable application of United States Supreme Court precedent. <u>Baylor v.</u>
2  <u>Estelle</u>, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the
3  states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a
4  state court decision is objectively unreasonable.  <u>See</u> <u>Clark v. Murphy</u>, 331 F.3d 1062, 1069 (9th
5  Cir.2003); <u>Duhaime v. Ducharme</u>, 200 F.3d 597, 600-01 (9th Cir.1999).

6  II.     <u>Review of Petition</u>

7       There is no independent right to parole under the United States Constitution; rather, the
8   right exists and is created by the substantive state law which defines the parole scheme.
9  <u>Hayward v. Marshall</u>, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing <u>Bd. of Pardons v.</u>
10 <u>Allen</u>, 482 U.S. 369, 371 (1987); <u>Pearson v. Muntz</u>, No. 08-55728, 2010 WL 2108964, * 2 (9th
11 Cir. May 24, 2010) (citing <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d
12 174 (2005)); <u>Cooke v. Solis</u>, No. 06-15444, 2010 WL 2330283, *6 (9th Cir. June 4, 2010).
13 "[D]espite the necessarily subjective and predictive nature of the parole-release decision, state
14 statutes may create liberty interests in parole release that are entitled to protection under the Due
15 Process Clause." <u>Bd. of Pardons v. Allen</u>, 482 U.S. at 371.

16      In California, the Board of Parole Hearings' determination of whether an inmate is
17 suitable for parole is controlled by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, §§ 2402(a) and (b).  Section 2402(c) sets forth circumstances tending to

demonstrate unsuitability for release. "Circumstances tending to indicate unsuitability include:

> (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
>> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
>> (C) The victim was abused, defiled or mutilated during or after the offense.
>> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
>> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
>
> (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
>
> (3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.'
>
> (4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.
>
> (5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.
>
> (6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

Section 2402(d) sets forth the circumstances tending to show suitability which include:

> (1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.
>
> (2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.
>
> (3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.
>
> (4) Motivation for Crime. The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.
>
> (5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

1    (6) Lack of Criminal History.  The prisoner lacks any significant history of violent crime.

2    (7) Age.  The prisoner's present age reduces the probability of recidivism.

3    (8) Understanding and Plans for Future.  The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

4

5    (9) Institutional Behavior.  Institutional activities indicate an enhanced ability to function within the law upon release.

6 Cal. Code Regs. tit. 15, § 2402(d)(1)-(9)

7    The California parole scheme entitles the prisoner to a parole hearing and various

8 procedural guarantees and rights before, at, and after the hearing.  Cal. Penal Code § 3041.5.  If

9 denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute.  Id.  In

10 addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled

11 to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5.  The denial of parole must also be

12 supported by "some evidence," but review of the Board's or Governor's decision is extremely

13 deferential.  In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

14    Because California's statutory parole scheme guarantees that prisoners will not be denied

15 parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals

16 recently held California law creates a liberty interest in parole that may be enforced under the

17 Due Process Clause.  Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 2010 WL

18 2108964, at *4.  Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is

19 whether the state court's application of the some evidence rule was unreasonable or was based on

20 an unreasonable determination of the facts in light of the evidence.  Hayward v. Marshall. 603

21 F.3d at 563; Pearson v. Muntz, 2010 WL 2108964, at *2-3.

22    The applicable California standard "is whether some evidence supports the *decision* of

23 the Board or the Governor that the inmate constitutes a current threat to public safety, and not

24 merely whether some evidence confirms the existence of certain factual findings."  In re

25 Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted).  As to the

26 circumstances of the commitment offense, the Lawrence Court concluded that

27    although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated
28    nature of the crime does not in and of itself provide some evidence of current

7

>  dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.

In addition, "the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prison remains a danger to the public. It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." In re Lawrence, 44 Cal.4th at 1212.

"In sum, a reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" Cooke v. Solis, No. 06-15444, 2010 WL 2330283 (9th Cir. June 4, 2010) (emphasis in original) (citing Hayward v. Marshall, 603 F.3d at 560).

At Petitioner's twenty-third parole consideration hearing in 2006, the parole commissioners split in their decision of whether Petitioner should be found suitable for release. The case was referred to an en banc board, which summarily denied parole. The Sacramento County Superior court construed the en banc denial as dependent on the factors cited by the commissioner who supported the decision to deny parole. This Court will do the same.

In the last reasoned decision of the Sacramento County Superior Court, the Court found that some evidence supported the en banc panel's decision to deny parole stating in relevant part:

>  In petitioner's case, the Board relied heavily on his commitment offense, which it is entitled under *Dannenberg* to do, as long as the crime does not represent simply the minimum elements of the offense. Petitioner's crimes were committed on separate occasions against multiple persons singled out only because of their race. Petitioner was urged to commit such crimes by the Nation of Islam, but the records failed to show why petitioner would be particularly drawn to this group or why, after a relatively short association, he would commit murder for the group. Thus, his motive seems trivial in relationship to the crime.
>
>  There are, of course, any number of factors that would weigh in favor of parole, but the court does not reweigh the evidence. Nor does the court re-assess

>the Board's reasoning, element by element. The court looks only to see whether some evidence supports the ultimate decision. In this case, some evidence exists to support the denial of parole. That evidence is the commitment offense, which is far more egregious than normal, even for first-degree murder.
>
>Petitioner was the triggerman in the assault on the off-duty police officer and in the murder. He is not in the same situation as his co-defendants, even if they were convicted of the same or similar crimes. His parole determination need not be compared with theirs. In any case, the Board is not compelled to conduct comparative analysis.

(Exhibit 2, to Answer.)

As just stated, the state superior court found the circumstances of the commitment offense, alone, was sufficient to deny parole. However, as previous stated, the California Supreme Court subsequently clarified the standard of review applicable to parole determinations in <u>Lawrence</u>, and contrary to the state superior court's finding, the circumstances of the commitment offense may be relied upon by the Board to deny parole so long as it remains probative of his current dangerousness when viewed in light of the entire record. <u>In re Lawrence</u>, 44 Cal.4th at 1221.

The state superior court's decision upholding the denial of parole based solely on the circumstances of the commitment offense was an unreasonable application of California's some evidence standard. In finding Petitioner unsuitable for parole, the Board relied on the circumstances of the commitment offense, trivial motive, and escalating pattern of criminal conduct and failure to profit from previous grants of probation.

With regard to the commitment offense, the Board found it was carried out in an especially cruel and very callous manner, and multiple victims were attacked, injured, and killed, in three separate unrelated incidents. The Board also found the motive to be trivial as the shootings were motivated by racism as a part of Petitioner's participation in the Islamic faith, which taught that Caucasians were devils and that it was the duty of each Muslin to murder four devils.

While the factual circumstances underlying Petitioner's convictions were undoubtedly atrocious, the question remains whether 32 years later, it remains indicative of his present dangerousness to the public. Petitioner was 19 years old at the time of the commitment, and 51

years old at the time of the 2006 hearing.  The commitment offenses were committed 32 years prior to the parole hearing, and Petitioner had been incarcerated for that period of time.  At the 2006 hearing, Petitioner repeatedly accepted full responsibility for the offenses and explained the remorse he felt for his actions.  In the most recent psychological report, by Dr. Schroeder, dated May 5, 2006, it was opined that:

> [Petitioner] understands that he was not independent thinking person while under the influence of Black Muslims who were violating the tenets of their religion.  In hindsight, he sees himself as a follower who did not think through his attitudes and beliefs and allowed himself to be swept up in a belief system that supported violence, in contrast to the Muslim faith.  He has accepted full responsibility for his crimes.  Dr. Schroeder concluded that Petitioner "can be counted to be a productive, self sufficient, contributing member of society.

Dr. Schroeder's assessment is consistent with the 2004 opinion of the prior Psychological, Dr. Wagner, who found that Petitioner "expressed considerable remorse and empathy for his victim and stated that he was involved in a victim restitution program and wrote a letter to the District Attorney to give to the victim's family.  He said he feels ashamed of what he did and of becoming brainwashed into the Nation of Islam mindset."  Dr. Wagner concluded that Petitioner's potential for violence was reduced by his "age and maturity, taking full responsibility for his criminal acts, expressing significant remorse for his victims, gaining insight into the causative factors leading to his Committing Offense, having a minimal criminal history prior to his Commit[ment] Offense, having a minimal criminal history prior to his Commit[ment] Offense, and having good vocational skills and a viable parole plan."  In comparison to other minimum security inmates, [Petitioner's] potential for violence is considered to be lower."  Based on Petitioner's overwhelming insight into the commitment offense, there must be some other evidence to demonstrate that he remains an unreasonable risk to public safety is released.  <u>Lawrence</u>, 44 Cal.4th at 1214.

The Board found that Petitioner has an escalating pattern of criminal conduct and failed previous grants of probation.  Yet, the Board later recognized that Petitioner had a minimal criminal history consisting of one juvenile conviction for petty theft and no prior adult convictions.  It is clear Petitioner had not committed any prior violent offenses and there is not some evidence that this factor remains predicative of Petitioner's current dangerousness.  <u>See</u>

Cal. Code Regs. tit. 15, § 2402(c)(2) (a factor demonstrating unsuitability is previous record of violence when "[t]he prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age."). This finding is also supported by the psychological report which stated that Petitioner did not have a history of violence other than the commitment offense. The psychologist concluded that Petitioner possessed a below average risk of harm to others when compared to the parolee population and equal risk of harm compared to the average citizen.

In addition, the record before the Board at the 2006 hearing is replete with evidence of Petitioner's extensive rehabilitation, including exemplary institutional behavior, completion of several vocational training courses, employment within the prison, self-help programming, strong family ties, marketable employment skills, solid parole plans, and support by correctional officials. With regard to Petitioner's institutional behavior, he had suffered eight serious rules violation, however, the last occurred in 1984 for failure to report to class, and four counseling chronos, the last in 2004 for out of bounds. Petitioner has remained free of any serious rules violations for the last 26 years of incarceration and none of the prior violations involved violence. See Cal. Code Regs. tit. 15, § 2402 (c)(6) ("Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail."). Therefore, Petitioner's institutional behavior for the past two and a half decades has been exemplary, and supports the finding that he is suitable for release on parole.

Petitioner has participated in numerous self-help programs, including Alcoholics Anonymous and Narcotics Anonymous, Basic Alternatives to Violence, faith-based pre-release program, creative options, parenting program, success from inside out, victim awareness program, Ways to Happiness, and individual and group therapy. Petitioner has also completed several vocational training programs, including automotive mechanics, welding, and electrical technician.

Petitioner received several laudatory chronos from correctional staff. The oldest dated August 31, 2006, by his vocational instructor, Mr. Medeiros, indicated that Petitioner was assigned to the vocational automotive mechanics class as a teacher's aide and clerk. Medeiros

praised Petitioner stating the following:

> [H]is experience - - extensive knowledge and expertise in the field of auto motive repair and his clerical skills have been valuable in a number of areas, and helping this instructor set up and reopen the facility two auto mechanics shop, [Petitioner] was very instrumental in helping me put together the class curriculum. He's also been and continues to be a very helpful in working with other inmates and working on learning activity and on practical projects. You're accountable, dependable, and willing to work hard.

(Transcript, at 30.)

The next chrono is dated September 1, 2006, acknowledged Petitioner's participation in several self-help programs. There was also a chrono dated April 15, 2004, in which Petitioner received above grades in his work assignment. Petitioner also received two Associate of Science degrees in computer science and electronics.

Petitioner has a stable social history and has maintained strong connections with his family members through letters and visitations. In regard to Petitioner's parole plans, the Board found that he had viable residential plans and marketable skills upon release. See Cal. Code Regs. tit. 15, §2281(d)(8) (a factor in support of suitability is whether "[t]he prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.").[3] Petitioner planned to reside with his brother or uncle in Sacramento. Petitioner had numerous letters of support from family members. Petitioner has completed four different skill levels to assist him in obtaining a job. He also performed above satisfactory in his prison employment, which is supported by the numerous laudatory chronos. Therefore, this factor is also in favor of Petitioner's suitability for release.

In light of the evidence before the Board at the 2006 hearing, there is no basis to conclude that the circumstances of the commitment offense provide some evidence to support the finding that Petitioner currently posed an unreasonable risk to public safety. In sum, the Board's ultimate conclusion that Petitioner "needs therapy in order to face, discuss, understand and cope with stress in a nondestructive manner until progress is made, [he] continues to be unpredictable and a threat to others" is completely unsupported by the record, and the state courts' determination that

---

[3] The statute does not require an actual job offer.

the circumstances of the commitment offense constitute some evidence of Petitioner's current dangerousness is an unreasonable application of the facts in light of the evidence. 28 U.S.C. § 2254(d)(2).

### RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be GRANTED;
2. The Board of Parole Hearings be DIRECTED to reverse its October 11, 2006, decision, thereby providing Petitioner with any parole credit for time since the October 11, 2006 decision as if release had been granted and any other term credit which he is entitled to by law.[4]

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   June 25, 2010                    /s/ Dennis L. Beck
                                          UNITED STATES MAGISTRATE JUDGE

---

[4] The Court notes that on April 26, 2010, Petitioner was released on parole for a determinate term of 5 years. (Notice of Release, Exhibit 1.)